IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF UTAH

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>CELLLULAR PHONES FOUND WITH M.G. | Case No. 2:25mj820 JCB |

AFFIDAVIT IN SUPPORT OF AN
APPLICATION UNDER RULE 41 FOR A
WARRANT TO SEARCH AND SEIZE

I, Nathan Fuluvaka, being first duly sworn, hereby depose and state as follows:

INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of electronic devices that are currently in law enforcement possession, and the extraction from those electronic devices of electronically stored information described in Attachment B.

2. I am a Special Agent with the Department of Homeland Security (DHS), U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) who has the authority to investigate this crime. Your Affiant has a Bachelors of Science Degree and has worked in law enforcement since 2015. Your affiant has attended a 26-week criminal investigator/ special agent training at the Federal Law Enforcement Training Center (FLETC). Your affiant has been a part of different task forces that were involved in, seizing fraudulent and/or counterfeit documents, attaining search warrants for seizing electronic devices, seizing large amounts of cash and narcotics. Your affiant is an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and

am empowered by law to conduct investigations and to make arrest for offenses enumerated in Section 2516 of Title 18, to include Sections 8, 18, 19, and 21 of the United States Code.

3.      Among other duties, I am currently involved in the investigation of a human trafficking organization (HTO), involving Tren de Aragua, and operating in Utah.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that the information sought and described in Attachment B will assist law enforcement in their investigation.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

6.      The property to be searched is described as: Phones in possession of Miguel GIL Gonzalez, at the time of arrest, which includes the following three (3) cellular phones:

- White iPhone
- Blue Motorola phone
- Blue Samsung phone, IMEI: 352271525870045

hereinafter the "Devices." The Devices are currently located at, 2975 Decker Lake Drive, West Valley City, Utah.

7.      The applied-for warrant would authorize the forensic examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

2

8. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter.

9. As set forth below, I submit that there is probable cause to believe that within the data inside the Devices there exists evidence of violations of Title 18, United States Code, Section 1591, Sex trafficking of children or by force, fraud, or coercion.

## FACTS TO ESTABLISH PROBABLE CAUSE

10. In November 2024, Homeland Security Investigations (HSI) Salt Lake City initiated an investigation into a local Tren de Aragua (TdA) organization involved in commercial sex trafficking. The investigation identified many members involved in the recruitment and transportation of Venezuelan commercial sex workers, posting and scheduling commercial sex acts and the subsequent money laundering. The investigation has identified approximately 15 – 20 commercial sex workers (CSWs) working for the organization.

11. HSI Salt Lake City has partnered with several local Law Enforcement Agencies to fully identify, disrupt, and dismantle this human trafficking organization (HTO). As part of this investigation, the following subjects were identified to include:

- **Briann HERNANDEZ Castillo**
- **Raquel FAGUNDEZ Pitre**
- **Kender BRIEO Quijada**
- **Miguel GIL Gonzalez**
- **Manuel FERRER Bastardo**
- **Kelvis NAMIAS Castillo**
- **Yeimi FAGUNDEZ Pitre**

- **Miller AZUAJE Velasquez**

- **Luis HERNANDEZ Guzman**

- **Pedro GONZALEZ**

- **Osmar LUNA Gonzalez**

12.     On April 9, 2025, all eleven of the named subjects (above) were indicted by a federal grand jury in Salt Lake City. Federal arrest warrants have been issued for their arrest. During the investigation and through various investigative techniques, your affiant was able to locate Miguel GIL Gonzalez in the Miami Florida area. On August 15, 2025, HSI Salt Lake City along with HSI Miami conducted an arrest operation and took GIL Gonzalez into custody. GIL Gonzalez was driving in a black Volvo SUV when he was arrested and was found to be in possession of three different cellular devices. HSI Salt Lake City seized the devices incident to arrest and then stored the devices at the HSI Salt Lake City office.

13.     Based on my training and experience, and the information detailed below, I believe there is probable cause to search the cellular telephone(s) found in the possession of Miguel GIL Gonzalez, seized incident to his arrest.

14.     GIL has been indicted for violations of 18 U.S.C. § 1591, Sex trafficking by force, fraud, or coercion. During the course of this investigation, HSI Special Agents have recovered electronic communications, online advertisements, and financial transactions that show GIL coordinated commercial sex acts, arranged payments, and directed associates using telecommunication devices. Special Agents have previously linked multiple phone numbers to online commercial sex advertisements associated with GIL. Also, in communications and chat

4

records, GIL directed others on where to post ads, where to collect payments, and how to coordinate the movement of commercial sex workers.

15. In the last few weeks, Special Agents debriefed a source of information (SOI) who had direct knowledge of GIL's criminal activity. The SOI confirmed that GIL relied heavily on his cellular telephones to conduct his illicit activities, including directing others, arranging meetings, and collecting payments. The SOI further stated that GIL frequently changed phones because he was aware law enforcement was investigating him and attempted to evade law enforcement by rotating devices.

16. Screenshots of prior chats between GIL and others, show coordination of commercial sex activity and collection of payments are attached. Your affiant reviewed the communications chart obtained from a previously seized device related to this operation. The chart below reflects both the original Spanish language messages and their English translations as captured directly from the chat records. Your affiant has many more pages of communications like these, but is using these as an example of what went on in the mass of messaging. The review of the messages below revealed the following.

    a. Direction of Communications: messages were both sent by and received by GIL. Commercial sex workers (CSWs) and associates provided updates to GIL regarding their movements, and confirmed payments. GIL responded by confirming amounts, acknowledging receipt of payments, and directing further actions.

    b. Payments and Proof of Payment: multiple messages documented the exchange of dollar amounts, including $100, $120, $150, and $250. CWS's and associates provided screenshots or photographs of Venmo transactions and receipts as proof

5

of payment. GIL acknowledged these payments and confirmed when they were accepted.

c. Logistics and Coordination: CSW's and associates coordinated logistical movements with GIL, including estimated arrival times, confirmation of clients, and updates on their status. GIL confirmed when individuals or transactions were "active" or "activated," showing his direct oversight of operations.

d. The chart showed repeated communications between GIL and the following CSW's and know associates within the sex trafficking conspiracy: Ninoska Gonzalez-Pinto, María Zabala-Granda, and Yeimi Fagundez-Pitre

Instant Messages (693)

| Timestamp-Time | From | Body | Translation |
|---|---|---|---|
| 9/8/2024 4:34:13 AM(UTC+0) | System Message System Message | Miguel GIL-Gonzalez (Llavero 🔑) added . Ninoska Gonzalez-Pinto | |
| 9/8/2024 5:22:33 AM(UTC+0) | Maria Zabala-Granda | Ya pagó | already paid |
| 9/8/2024 5:23:26 AM(UTC+0) | Maria Zabala-Granda | Q tiene 100 | That he has 100 |
| 9/8/2024 5:37:44 AM(UTC+0) | Maria Zabala-Granda | Anota 100 | Anotate 100 |
| 9/8/2024 5:37:49 AM(UTC+0) | Maria Zabala-Granda | Ya llegó | He arrived |
| 9/8/2024 5:55:38 AM(UTC+0) | Maria Zabala-Granda | 10 minutos | 10 minutes |
| 9/8/2024 5:58:34 AM(UTC+0) | Yeimi FAGUNDEZ-Pitre (Llavera) | Ok | ok |
| 9/8/2024 6:02:24 AM(UTC+0) | Ninoska Gonzalez-Pinto | Posi 250 | Well yeah 250. |
| 9/8/2024 6:49:38 AM(UTC+0) | Ninoska Gonzalez-Pinto | Mate | Killed |
| 9/8/2024 7:13:31 AM(UTC+0) | Ninoska Gonzalez-Pinto | 150 | 150 |
| 9/8/2024 7:13:37 AM(UTC+0) | Ninoska Gonzalez-Pinto | Mate | Killed |
| 9/8/2024 7:19:55 AM(UTC+0) | Maria Zabala-Granda | Ya voy vía al hotel | I'm already on my way to the hotel |
| 9/8/2024 7:29:27 AM(UTC+0) | Miguel GIL-Gonzalez (Que Pasaria) | Activas | Active |
| 9/8/2024 7:29:33 AM(UTC+0) | Maria Zabala-Granda | Si | Yeah |
| 9/9/2024 4:03:07 AM(UTC+0) | Miguel GIL-Gonzalez (Que Pasaria) | Activas | Active |
| 9/9/2024 4:03:13 AM(UTC+0) | Maria Zabala-Granda | Si | Yeah |
| 9/9/2024 5:55:44 AM(UTC+0) | Ninoska Gonzalez-Pinto | | |
| 9/9/2024 5:55:48 AM(UTC+0) | Ninoska Gonzalez-Pinto | Posi | Well Yeah. |
| 9/9/2024 6:04:50 AM(UTC+0) | Ninoska Gonzalez-Pinto | Mate | Killed |
| 9/9/2024 6:11:56 AM(UTC+0) | Maria Zabala-Granda | Ya entro | He came in |
| 9/9/2024 6:13:35 AM(UTC+0) | Maria Zabala-Granda | Listo 100 | Ready 100 |
| 9/9/2024 6:48:19 AM(UTC+0) | Ninoska Gonzalez-Pinto | 100 posi | Well yea 100 |
| 9/9/2024 6:49:40 AM(UTC+0) | Maria Zabala-Granda | Ya pagó uno | One already paid |
| 9/9/2024 6:49:44 AM(UTC+0) | Maria Zabala-Granda | El otro fue al mueble | The other went to the car |
| 9/9/2024 7:04:01 AM(UTC+0) | Maria Zabala-Granda | Ya llegó el otro | The other one has arrived |
| 9/9/2024 7:04:41 AM(UTC+0) | Maria Zabala-Granda | Vemo | Venmo |
| 9/9/2024 7:04:45 AM(UTC+0) | Maria Zabala-Granda | Cuál es | which one is it? |
| 9/9/2024 7:05:37 AM(UTC+0) | Miguel GIL-Gonzalez (Llavero 🔑) | | |
| 9/9/2024 7:06:07 AM(UTC+0) | Maria Zabala-Granda | 155 | 155 |
| 9/9/2024 7:06:10 AM(UTC+0) | Maria Zabala-Granda | Revisa | Check |
| 9/9/2024 7:06:25 AM(UTC+0) | Yeimi FAGUNDEZ-Pitre (Llavera) | Ya | already |
| 9/9/2024 7:02:37 PM(UTC+0) | Ninoska Gonzalez-Pinto | Posi 100 | well yea 100 |
| 9/9/2024 7:10:22 PM(UTC+0) | Ninoska Gonzalez-Pinto | Mate | killed |
| 9/9/2024 7:59:30 PM(UTC+0) | Maria Zabala-Granda | 20 por vemo | 20 throgh venmo |
| 9/9/2024 7:59:34 PM(UTC+0) | Maria Zabala-Granda | Y 80 en efectivo | and 80 cash |
| 9/9/2024 8:01:45 PM(UTC+0) | Yeimi FAGUNDEZ-Pitre (Llavera) | Ok | ok |
| 9/9/2024 8:01:54 PM(UTC+0) | Yeimi FAGUNDEZ-Pitre (Llavera) | | |
| 9/9/2024 9:27:24 PM(UTC+0) | Ninoska Gonzalez-Pinto | Posi 150 | Well yea 150 |
| 9/9/2024 9:57:12 PM(UTC+0) | Ninoska Gonzalez-Pinto | Mate | killed |
| 9/10/2024 4:23:44 AM(UTC+0) | Miguel GIL-Gonzalez (Llavero 🔑) | Estamos activos | We are active |
| 9/10/2024 4:23:50 AM(UTC+0) | Miguel GIL-Gonzalez (Llavero 🔑) | Andamos haciendo mercado | We are making the market |

| Timestamp | Sender | Message | Translation |
|---|---|---|---|
| 9/11/2024 6:24:44 PM(UTC+0) | Yelmi FAGUNDEZ-Pitre (Llavera) | | |
| 9/11/2024 8:49:39 PM(UTC+0) | Ninoska Gonzalez-Pinto | Posi 120 | Well yea 120 |
| 9/11/2024 9:06:02 PM(UTC+0) | Ninoska Gonzalez-Pinto | Mate | Killed |
| 9/12/2024 3:21:39 AM(UTC+0) | Ninoska Gonzalez-Pinto | 100 posi | Well yea 100 |
| 9/12/2024 3:21:40 AM(UTC+0) | Ninoska Gonzalez-Pinto | Mate | Killed |
| 9/12/2024 5:16:38 AM(UTC+0) | Ninoska Gonzalez-Pinto | 150 posi | Well yea 150 |
| 9/12/2024 1:27:21 PM(UTC+0) | Miguel GIL-Gonzalez (Llavero🔑) | Activos | active |
| 9/12/2024 2:27:17 PM(UTC+0) | Maria Zabala-Granda | Ya 100 | Already 100 |
| 9/12/2024 2:42:48 PM(UTC+0) | Yelmi FAGUNDEZ-Pitre (Llavera) | Jajajaka activaitaa | Jajaja active |
| 9/12/2024 2:50:29 PM(UTC+0) | Ninoska Gonzalez-Pinto | Posi 150 | Well Yea 150 |
| 9/12/2024 7:45:03 PM(UTC+0) | Maria Zabala-Granda | . | |
| 9/12/2024 9:04:06 PM(UTC+0) | Ninoska Gonzalez-Pinto | Posi 120 | Well yea 120 |
| 9/12/2024 9:20:19 PM(UTC+0) | Ninoska Gonzalez-Pinto | Yelmi métete en el wasa | Yelmi get into the wasa |
| 9/12/2024 9:40:18 PM(UTC+0) | 18453295937@s.whatsapp.net Geperu | Poso 150 | Well yea 150 |
| 9/12/2024 9:53:05 PM(UTC+0) | 18453295937@s.whatsapp.net Geperu | Listo | Ready |
| 9/13/2024 12:26:46 AM(UTC+0) | Ninoska Gonzalez-Pinto | | |
| 9/13/2024 12:26:46 AM(UTC+0) | Ninoska Gonzalez-Pinto | 150 y 50 míos | 150 and 50 mine |
| 9/13/2024 12:27:28 AM(UTC+0) | Miguel GIL-Gonzalez (Llavero🔑) | Bello | Beautiful |
| 9/13/2024 12:29:30 AM(UTC+0) | 18453295937@s.whatsapp.net Geperu | Poso 100 | well yea 100 |
| 9/13/2024 12:32:29 AM(UTC+0) | Miguel GIL-Gonzalez (Que Pasaria) | Maten llegó otro | Kill another one arrived |
| 9/13/2024 12:32:34 AM(UTC+0) | Miguel GIL-Gonzalez (Que Pasaria) | Avíseme | let me know |
| 9/13/2024 12:32:41 AM(UTC+0) | Miguel GIL-Gonzalez (Que Pasaria) | A quien le envio | Who do I send to? |
| 9/13/2024 12:32:44 AM(UTC+0) | Miguel GIL-Gonzalez (Que Pasaria) | El otro | The other |
| 9/13/2024 12:38:22 AM(UTC+0) | Ninoska Gonzalez-Pinto | Mate | Killled |
| 9/13/2024 12:40:37 AM(UTC+0) | Yelmi FAGUNDEZ-Pitre (Llavera) | Ninoskaaa | Ninoskaaa |
| 9/13/2024 12:40:39 AM(UTC+0) | Miguel GIL-Gonzalez (Que Pasaria) | Va subiendo | It's going up |
| 9/13/2024 12:42:15 AM(UTC+0) | Miguel GIL-Gonzalez (Que Pasaria) | Activos | Active |

17. I have not only learned that GIL uses his cellular phone as part of his sex trafficking operation, but also that, based on my training and experience, individuals engaged in sex trafficking routinely use cellular telephones to facilitate their criminal activity, including posting and responding to online advertisements, arranging meetings with buyers, communicating with co-conspirators, storing location information, conducting mobile payments, and storing photographs used in advertisements. Cellular phones frequently contain evidence of such conduct, including but not limited to: call logs, text messages, application data (e.g., WhatsApp, Telegram, Signal, Instagram), photographs, videos, internet history, GPS location data, and stored contacts.

18. Given that GIL has previously used cellular telephones to conduct sex trafficking activity, that a cooperating SOI confirmed his reliance on phones for illicit conduct, that corroborating screenshots of chat records are included, and that he was in possession of three cellular telephones at the time of his arrest, there is probable cause to believe that evidence of violations of 18 U.S.C. § 1591 will be found within these devices.

19. In my training and experience, I know that the Devices have been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into the possession of the HSI.

TECHNICAL TERMS

20. Based on my training and experience, I use the following technical terms to convey the following meanings:

a. The "Device" or "Devices" (Wireless telephone): A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to

photographs or videos. The "Devices" indicated in this affidavit contain digital cameras.

c. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

d. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP

addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

e. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

f. Messaging: The ability to communicate through additional mediums outside of the regular cellular service to include SMS text, MMS, email, application platforms such as but not limited to WhatsApp, Facebook, Dingtone, Google Voice, Viber, etc.

21. Based on my training, experience, research, and from consulting the manufacturer's advertisements and product technical specifications available online at www.phonescoop.com, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, internet computer, and GPS navigation device. Additionally, in my training and experience, examining data stored on devices of these types can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

ELECTRONIC STORAGE AND FORENSIC ANALYSIS

22. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the

Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

23. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be on the Devices because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

   b. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

   c. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is

evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

d. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

24. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

25. *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

26. I submit that this affidavit supports probable cause for a search warrant authorizing the forensic examination of the Devices described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

                    /s/ Nathan Fuluvaka
Nathan Fuluvaka
Special Agent
Homeland Security Investigations

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1. on September 9, 2025.

________________________________________

Jared C. Bennett
United States Magistrate Judge

ATTACHMENT A

The property to be searched is cellular phones that were in possession of Miguel GIL Gonzalez, at the time of his arrest on August 15, 2025, in the Miami Florida area;

- White iPhone
- Blue Motorola phone
- Blue Samsung phone, IMEI: 352271525870045

The Devices are currently located at the 2975 Decker Lake Dr, West Valley City, Utah.

## ATTACHMENT B

1. All records, contained in the devices, that relate to violations of 18 U.S.C. § 1591, Sex trafficking of children or by force, fraud, or coercion including:

> a. All text messages (SMS, MMS, iMessage, Messenger, WhatsApp, or other social media and application-based communications) between Miguel GIL Gonzalez, co-conspirators, victims, or customers, including communications relating to:
>
> - recruitment, enticement, harboring, transportation, provision, or obtaining of victims;
> - advertising of commercial sex acts;
> - pricing, negotiations, or scheduling of sex acts;
> - threats, coercion, or control of victims; and
> - communications with customers ("johns") or other facilitators.
>
> b. Photographs, videos, and other media depicting victims, commercial sex advertisements, or sex acts, including associated metadata (time/date/GPS).
>
> c. Social media records and content from applications (e.g., Facebook, Instagram, Snapchat, TikTok, Twitter/X, dating/escort apps) evidencing recruitment, advertisement, or communication with customers.
>
> d. Contact lists, stored names, phone numbers, email addresses, or identifiers associated with victims, customers, or co-conspirators.
>
> e. Location information including GPS data, geotags, maps searches, rideshare or hotel applications, or other travel-related records evidencing the transportation or movement of victims.

   f. Financial records including bank apps, digital wallets (CashApp, Venmo, Zelle, PayPal, cryptocurrency wallets), stored account information, payment receipts, or evidence of proceeds derived from commercial sex acts.

   g. Internet browsing history, cache, and search terms related to sex trafficking, sex advertisements, hotel bookings, travel, or avoiding law enforcement detection.

   h. Notes, documents, or files evidencing recruitment, harboring, or exploitation of victims.

2. Evidence of user attribution showing who used or owned the device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.